UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT E. DIAMOND, JR. and ATLAS MERCHANT CAPITAL LLC,<br><br>        *Plaintiffs*,<br><br>v.<br><br>TRILLER GROUP, INC.,<br><br>        *Defendant*. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No. 25-cv-00129- (PAE) |

Plaintiffs Robert E. Diamond, Jr. ("Mr. Diamond") and Atlas Merchant Capital LLC ("Atlas") (collectively, the "Plaintiffs"), for their complaint against Triller Group, Inc. ("Triller"), formerly known as AGBA Group Holding Ltd ("AGBA," and with Triller, the "Company"), seeking recovery of shares and compensation withheld by Triller, allege as follows:

## INTRODUCTION

1. This action is brought by Mr. Diamond and Atlas to recover approximately $5,000,000 in compensation and over 6,000,000 shares of Tiller's common stock for the provision of labor and services to Triller.

2. Despite Plaintiffs' fulfillment of their obligations under the relevant agreements, Defendants have breached these agreements by refusing to compensate Plaintiffs.

3. Mr. Diamond served as Chair of the Board of Directors of Triller's predecessor, AGBA, and of the Board of Directors of Triller since 2023.

4. Mr. Diamond co-founded Atlas and has been serving as its Chief Executive Officer since 2013.

5.      Mr. Diamond's decades-long financial services experience, leadership track record, credibility in global finance, and expertise in business management made him an invaluable asset to AGBA, particularly during its consideration of the merger that led to Triller.

6.      The Company entered into a series of agreements with Mr. Diamond and Atlas to secure advisory and leadership services from 2023 until the present.

7.      In exchange for their services, Mr. Diamond and Atlas were guaranteed compensation in the form of monetary compensation and, as to Mr. Diamond, equity.

8.      On September 19, 2023, Mr. Diamond signed an Agreement with Triller governing the terms on which he agreed to serve as Chairman of the AGBA Board of Directors ("First Director Services Agreement").

9.      ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

10.     On April 16, 2024, an initial Merger Agreement was executed between Triller and AGBA.

11.     On July 19, 2024, the AGBA Board of Directors approved a share incentive grant through which they awarded Mr. Diamond 15,000,000 shares of stock in consideration of his support in facilitating the completion of the anticipated merger and for his stewardship post-merger ("Share Grant Resolution").

12.     On August 30, 2024, Triller and AGBA entered into an Amended and Restated Agreement and Plan of Merger.

13. On October 1, 2024, Triller and Mr. Diamond entered into another Agreement governing the terms on which Mr. Diamond would continue to serve as Chairman of AGBA and its successor entity, Triller ("Second Director Services Agreement," and with the First Director Services Agreement, ███████████████, and the Share Grant Resolution, the "Agreements").

14. Despite the Agreements' unambiguous terms, Triller has repeatedly failed to meet its payment obligations to Plaintiffs.

15. Plaintiffs continued to fulfill their obligations under the Agreements even though Triller management, in violation of management's duty of disclosure and candor to the Board, routinely excluded Mr. Diamond from accessing critical information necessary to discharge his duties properly and refused to schedule necessary board meetings.

16. Despite these challenges, Plaintiffs continued to exercise diligence in fulfilling their obligations to Triller due under the Agreements, contributing significantly to the successful closing of the merger between AGBA and Triller on October 15, 2024 ("Triller Merger").

17. However, following the Triller Merger, Plaintiffs faced continued exclusion and non-payment for their services which, coupled with Mr. Diamond's growing concern regarding governance failures at the Company, culminated in Mr. Diamond's resignation from the Board and ████████████████████████████████████████████████████.

18. Plaintiffs now seek to recover damages based on breach of contract and quantum meruit.

**PARTIES**

19. Robert E. Diamond, Jr. is a citizen of New York and the former Chairman of the Board of Directors of Triller, and before that AGBA, since September 2023.

20. Mr. Diamond currently serves as Chief Executive Officer of Atlas and has served in this role since 2013.

21. Before co-founding Atlas, Mr. Diamond served as Chief Executive Officer of Barclays Bank PLC, a multinational British bank.

22. Triller is a Delaware corporation with its principal place of business at 2121 Avenue of the Stars, Suite 2350, Los Angeles, California 90067.

23. On October 15, 2024, Triller completed its merger with AGBA via the Triller Merger.

24. Atlas Merchant Capital LLC is a limited liability company whose members are citizens of New York, New Jersey, and Canada.

**JURISDICTION AND VENUE**

25. This Court has subject-matter jurisdiction under 28 U.S.C. §1332. Mr. Diamond is a citizen of New York and Atlas's members are citizens of New York, New Jersey, and Canada. Triller is a citizen of Delaware and California. The amount in controversy exceeds $75,000.

26. Venue is proper in the Southern District of New York because a substantial part of the events giving rise to Plaintiffs' claims occurred in New York City. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 112(b) (the Southern District of New York encompasses New York County).

27. The Agreements' forum-selection clauses also require that any actions arising out of the Agreement be brought in New York County.

**FACTUAL ALLEGATIONS**

28. In September 2023, AGBA set its sights on expanding its product-base and establishing a global presence.

29. To this end, AGBA, and later Triller, entered into a series of agreements with Mr. Diamond and Atlas to secure their strategic advisory services and Mr. Diamond's service on the Company's Board of Directors.

30. █████████████████████████████████████████████████████████████████████████████████████████.

31. █████████████████████████████████████████████████████████████████████████████████████████.

32. Additionally, in light of Mr. Diamond's significant experience in investment banking and business management, AGBA enlisted Mr. Diamond's support in investigating and ultimately facilitating the successful completion of the Triller Merger as Chairman of the AGBA Board of Directors.

33. On September 19, 2023, Mr. Wing-Fai Ng resigned as Chairman of the AGBA Board of Directors and Mr. Diamond was appointed as the new Chairman of the Board pursuant to the First Director Services Agreement.

34. Under the First Director Services Agreement, Mr. Diamond agreed to serve as Chairman in exchange for a Director Fee of $1,000,000 and grants of equity as approved by the Board of Directors.

35. As a result of Mr. Diamond's and ▬ efforts, including through an efficient and comprehensive diligence process, Triller was identified as a viable merger target.

36. An initial Merger Agreement was signed on April 16, 2024.

37. However, during Mr. Diamond's tenure as Chair of the AGBA Board of Directors, AGBA's management routinely failed to engage constructively with Mr. Diamond, including by providing incomplete information related to the management and oversight of AGBA.

38. For example, in June 2024, Mr. Diamond was asked to approve a line of credit for AGBA shortly before the closing date of the transaction, despite receiving no background or supporting documentation regarding the transaction.

39. To ensure the line of credit was in the best interest of AGBA stockholders, Mr. Diamond ensured there were guarantees of the line of credit from non-affiliated entities prior to approving the transaction.

40. Despite these challenges, Mr. Diamond persisted in carrying out his obligations to Triller.

41. On July 19, 2024, the AGBA Board of Directors passed the Share Grant Resolution, awarding Mr. Diamond 15,000,000 shares of stock in consideration of his support in facilitating the completion of the anticipated merger and for his stewardship post-merger. The Share Grant Resolution was approved by stockholders in August 2024.

42. Pursuant to the Share Grant Resolution, 10,000,000 shares would vest at the closing of the Triller Merger and the balance would vest over the course of the next two years.

43. An Amended and Restated Merger Agreement for the Triller Merger was signed on August 30, 2024.

44. As the Triller Merger neared closing, Mr. Diamond entered into the Second Director Services Agreement on October 1, 2024, governing the terms on which he agreed to continue to serve as Chairman of the Board of Directors, through and after the closing of the Triller Merger.

45. In signing the Second Director Services Agreement, Mr. Diamond accepted the position of Chairman in exchange for a Director Fee of $1,000,000, Incentive Compensation in the form of a $2,000,000 bonus, and grants of equity as approved by the Board of Directors.

46. Mr. Diamond worked diligently to continue carrying out his role as Chair of the Board of Directors to the best of his ability, investing his time, knowledge, efforts, and expertise towards the facilitation of the merger opportunity and towards the leadership of the Company.

47. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

48. As a result of Plaintiffs' efforts, the Triller Merger closed on October 15, 2024.

49. Pursuant to the Delaware General Corporation Law, Triller assumed all of AGBA's agreements and liabilities, including the monetary compensation and stock owed to Mr. Diamond and ███.

50. Additionally, through the transactions contemplated by the Triller Merger, AGBA ordinary shares became shares of Triller common stock, subject to a 2.0634 to 1 forward split of AGBA ordinary shares.

51. Despite the completion of the Triller Merger and the Agreements, Mr. Diamond and ███ were not compensated for their efforts.

52. Moreover, following the completion of the Triller Merger, Company management placed Mr. Diamond in an almost impossible position: to continue in his role as Chair of the Board of Directors despite management frequently refusing to provide information and refusing to seek Board input before undertaking significant actions, or to resign.

53. On November 15, 2024, management sent a letter terminating the Employment Agreement with then Chief Executive Officer, Kevin McGurn, without providing the full Board of Directors an opportunity to review the termination letter.

54. That letter contained factual misstatements as to employment actions by the Company, which misstatements Mr. Diamond could have corrected had he been presented with the letter before it was sent.

55. In addition, after the Triller Merger closed, management ignored Mr. Diamond's requests for financial information from the CFO or acting-CEO.

56. The Company likewise made public filings with the Securities and Exchange Commission ("SEC") without providing the full Board of Directors a meaningful opportunity to review and comment on those filings.

57. Management similarly ignored Mr. Diamond's request to include the amount of shares of Company common stock approved and owed to both management and members of the Board of Directors in the Company's public SEC filings.

58. During this time, Triller began receiving calls from vendors alleging the Company was in arrears with numerous companies for nonpayment.

59. On November 26, 2024, one of Triller's creditors filed a summons and notice of motion for summary judgment in lieu of complaint against Triller and certain subsidiaries, alleging

Triller was in default of various agreements, and demanding payment of $35,546,302.19 plus interest, cost and fees.

60. Increasingly concerned regarding the trajectory of Triller and unable to access information necessary to the carrying out of his duties as a director, Mr. Diamond was left with no choice but to resign from the Board of Directors, submitting his resignation letter on December 12, 2024.

61. In his resignation letter, Mr. Diamond reiterated that "[o]n multiple occasions I have attempted to address" various corporate governance deficiencies "but have seen no meaningful or satisfactory improvements" and that, by way of example, Mr. Diamond had "not been provided necessary (and frequently requested) information at or prior to Board meetings."

62. Mr. Diamond also expressed concern that in recent months "numerous significant Company events and actions seemingly proceeded with no meaningful Board reporting or review at all, including decisions as to key executive management positions, filings with the SEC, capital raising activities and other critical matters that warrant significant Board level review, deliberation and approval."

63. ███████████████████████████████████████████████████████████████████████████████████████████.

64. Despite investing months of labor, time, expertise, services, effort, and capital, Mr. Diamond and ███ have not been paid what they are owed.

65. Mr. Diamond and Atlas now seek to recover damages for unlawful conduct, including, without limitation, breaches of the Agreements.

9

66. Mr. Diamond and Atlas seek:

(a) an immediate grant of 4,841,250 shares of common stock of Triller allotted for issuance to Mr. Diamond upon completion of the Triller Merger pursuant to paragraph 5 of the Share Grant Resolution;

(b) an immediate grant of 1,109,453 additional shares of common stock of the Company allotted for issuance to Mr. Diamond pursuant to paragraph 5 of the Share Grant Resolution;

(c) the immediate payment of services fees to Mr. Diamond in the amount of $1,000,000 for the period commencing on July 1, 2024 and ending on June 30, 2025, pursuant to Section 2.1 of the First Director Services Agreement and Section 2.1 of the Second Director Services Agreement;

(d) an immediate grant of 196,759 shares of common stock at an agreed upon value of $708,333.33 (determined based on an assumed VWAP of $3.60 per share for the period commencing on October 16, 2024 and ending on November 15, 2024) to Mr. Diamond, reflecting the equity compensation payable to him from October 15, 2024, through June 30, 2025, pursuant to Section 2.1 of the Second Director Services Agreement;

(e) the immediate payment of $2,000,000 representing the 2024 Bonus owed to Mr. Diamond pursuant to Section 2.2 of the Second Director Services Agreement;

(f) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ; and

(g) ███████████████████████████████████████
███████████████████████████████████████
██████████████████████.

## **COUNT I: BREACH OF CONTRACT**
**(First and Second Director Services Agreements)**

67. Mr. Diamond repeats and re-alleges paragraphs 1-66, as if fully stated herein.

68. As discussed above, Mr. Diamond and Triller executed the written First and Second Director Services Agreements, which governed the terms of their relationship from September 19, 2023, onward.

69. Mr. Diamond fulfilled his obligations under the First and Second Director Services Agreements.

70. Triller has breached the First and Second Director Services Agreements by failing to pay Mr. Diamond his compensation based on the terms of the contracts among them.

71. Pursuant to the First and Second Director Services Agreements, Triller owes Mr. Diamond his compensation for the period commencing on July 1, 2024 and ending on June 30, 2025, totaling $1,000,000.

72. Pursuant to the Second Director Services Agreement, Triller also owes Mr. Diamond his 2024 bonus compensation, totaling $2,000,000.

73. Pursuant to the Second Director Services Agreement, Triller also owes Mr. Diamond 196,759 shares of common stock at an agreed upon value of $708,333.33 (determined based on an assumed VWAP of $2.60 per share for the period commencing on October 16, 2024 and ending on November 15, 2025), reflecting the equity compensation payable to Mr. Diamond from October 15, 2024 through June 20, 2025.

11

74. As of the date of this Complaint, Triller has breached the First and Second Director Services Agreements by failing to deliver to Mr. Diamond any of the aforementioned compensation and shares owed to him pursuant to these agreements.

75. These breaches of contract caused Mr. Diamond damages in an amount to be determined at trial, but in any event, in excess of $3,708,333.33.

## COUNT II: BREACH OF CONTRACT
### (Share Grant Resolution)

76. Mr. Diamond repeats and re-alleges paragraphs 1-75, as if fully stated herein.

77. At its July 19, 2024 meeting, the AGBA Board of Directors, passed the Share Grant Resolution, awarding Mr. Diamond 15 million shares of Triller stock in connection with the Tiller-merger transaction.

78. Pursuant to the Share Grant Resolution, 10 million of these 15 million shares would vest at the closing of the Tiller-merger transaction, and the remaining 5 million would vest monthly in equal installments over the following two years.

79. The Share Grant Resolution was an agreement between Mr. Diamond and Triller, governing the terms of their relationship throughout and after the Triller Merger.

80. Mr. Diamond fulfilled his obligations under the Share Grant Resolution.

81. Triller has breached the Share Grant Resolution by failing to grant Mr. Diamond the full amount of shares owed to him.

82. As of the date of this Complaint, Mr. Diamond has not received 5,950,705 of the shares of common stock owed to him pursuant to the Share Grant Resolution.

83. This breach of contract caused Mr. Diamond damages in an amount to be determined at trial.

**COUNT III:** 

84. Plaintiffs repeat and re-allege paragraphs 1-83, as if fully stated herein.



**COUNT IV: QUANTUM MERUIT**

92. Plaintiffs repeat and re-allege paragraphs 1-91, as if fully stated herein.

93. In the alternative, and without prejudice to Plaintiffs' breach of contract causes of action in Counts I, II, and III, to the extent that Plaintiffs provided the Company with services

beyond the scope of the Agreements, Plaintiffs are entitled to recover from the Company under a theory of *quantum meruit*.

94. As set forth above, Plaintiffs provided highly specialized and invaluable services to the Company including, without limitation, advising the Company on the Triller Merger.

95. Plaintiffs provided these services to the Company in good faith.

96. Indeed, Mr. Diamond provided counsel and discharged his duties to the Company unflaggingly, despite the Company's persistent efforts to bar him from receiving information to which he was entitled and which he required to effectively discharge those duties.

97. The Company accepted Plaintiffs' services for over a year, from September 2023 through December 2024.

98. Plaintiffs reasonable expected compensation for their services to the Company.

99. Mr. Diamond expected compensation in the form of cash payments and awards of stock.

100. ████████████████████████████████████████.

101. The services Plaintiffs provided to the Company were of enormous value. Mr. Diamond's decades-long financial services experience, leadership track record, credibility in global finance, and expertise in business management were the driving force behind AGBA's consideration of the merger that led to Triller.

102. Because the Company has refused to compensate Plaintiffs, they have been damaged, in an amount to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Mr. Diamond and Atlas respectfully request the following relief: (i) compensatory damages, including but not limited to Mr. Diamond and ▋ unpaid compensation, and direct and consequential damages that Plaintiffs have suffered as a result of Defendants' wrongful conduct; (ii) damages for the wrongful withholding of compensation and fees of Plaintiffs, together with attorneys' fees, and costs; (iii) an order mandating Triller's issuance of shares owed to Mr. Diamond; and (iv) such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Diamond and Atlas demand a trial by jury for all issues so triable under Federal Rule of Civil Procedure 38(b).

Dated: December 30, 2024

DECHERT LLP

*/s/ Andrew J. Levander*
Andrew J. Levander
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

Richard Horvath (*pro hac vice* forthcoming)
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Tel.: (415) 262-4500
Fax: (415) 22-4555

Christopher J. Merken
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-4000
Fax: (215) 994-2222

***Attorneys for Robert E. Diamond, Jr. and Atlas Merchant Capital LLC***